UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>SONIA L. MEZQUITA VEGA,<br><br>　　　　　　　　Defendant. | Case No. CR20-120RSM<br><br>ORDER DENYING DEFENDANT MEZQUITA VEGA'S MOTION FOR REVIEW AND REVOCATION OF DETENTION ORDER |

### I.    INTRODUCTION

This matter comes before the Court on defendant Sonia L. Mezquita Vega's (the Defendant) "Motion for Review and Revocation of Magistrate Judge's Detention Order" (Dkt. # 144). The Court reviewed the motion, the government's response (Dkt. # 151), as well as the materials submitted in support of the original detention hearing, including the motion for detention, the defendant's response (Dkt. # 127, and attachments), the Pretrial Services Reports recommending detention, as well as the recording of the detention hearing and the other files and records in this matter. Having fully considered the parties' submissions and the record, the Court finds oral argument unnecessary and hereby **DENIES** the Defendant's motion and affirms the magistrate judge's detention order.

ORDER - 1

## II. BACKGROUND

### A. The Alleged Conspiracy and Defendants' Alleged Role

Defendant is indicted for her alleged role in a large multi-state and multi-national money laundering conspiracy. The government claims that Defendant played a mid-level leadership role in a "funnel account" money laundering scheme that moved large amounts of drug proceeds back to Mexico. The leaders allegedly (a) recruited various individuals to open bank accounts at Wells Fargo bank; (b) employed money mules or couriers to travel across the United States to multiple states to pick up the cash proceeds of the illegal sale of controlled substances – often in more than $100,000 increments; (c) caused those money mules to deposit the cash into the various Wells Fargo accounts opened as part of the scheme in those states, and then (d) caused individuals to either withdraw large amounts of cash from Wells Fargo branches in Arizona, close to the U.S. Mexico border, which was then body carried back into Mexico, and/or caused individuals to wire the funds to financial institutions in Mexico, all for the benefit of the drug trafficking organizations that retained the charged defendants to launder their funds.

The government alleges that Defendant played multiple roles in the money laundering scheme, and that her involvement is established by a combination of bank records, travel records, and cooperating witness testimony. First, the government claims Defendant opened a Wells Fargo account that was used as one of the funnel accounts. According to the government, various third parties, including one of the leaders in the conspiracy (co-defendant Luis Carreno-Ortega) deposited more than $325,000 in cash into Defendant's Wells Fargo Account, all in amounts exceeding $10,000. Several of the deposits were in the $40,000 range, and deposits were made in at least four different states, including Washington state. Second, the government alleges that defendant personally traveled herself to multiple states to make deposits into other funnel accounts held by different individuals. According to the government, between October of

2014 and August of 2016, Defendant made more than 25 different cash deposits into more than a dozen different Wells Fargo accounts. The deposits were all in excess of $10,000 with the largest deposit being $47,000, and they were made in at least six different states, one of which wash Washington State. In total, the government alleges that defendant was personally responsible for laundering over $1 million herself. Third, the government alleges that multiple cooperating witnesses/defendants have told government agents that defendant trained and supervised other members of the conspiracy in opening funnel accounts and traveling around the country to make deposits.

B.      **Defendant's Background**

Defendant is a Mexican national with extensive family ties to that country, including young children and other family members. Her ties to that country are long standing and deep, as established by the various letters and testimonials Defendant submitted to the magistrate judge – *see,* Dkt. # 127 and the exhibits thereto. She has some friends and relatives in the United States, all of whom appear to reside in Arizona. She has no ties to Western Washington whatsoever, and her only visits here appear to pertain to the alleged money laundering conspiracy. She has no criminal history.

C.      **Procedural History**

*Arizona:* Defendant was arrested on the warrant issued in this case when she crossed the border from Mexico into the United States in early February of this year. She had her initial appearance on February 4, 2022, and a detention and removal hearing was set for February 9, 2022. *See, Rule 5 Docket,* Dkt. # 113-1. Both of those hearings were repeatedly continued at the defendant's request, to permit her more time to contest both issues. The first hearing was continued at the defendant's request to allow counsel to investigate "new information regarding defendant's ties to the United States." *Id.* The hearing was continued a second time to provide

ORDER - 3

Arizona's Pretrial Services more time to interview a prospective third-party custodian. *Id*. After conducting the interview and finishing its investigation, the Arizona Pretrial Services Officer recommended detention, stating "there is no condition or combination of conditions to reasonably assure the defendant's appearance in court."

The detention hearing was finally held on March 9, 2022, and defendant was ordered detained. However, defendant continued to contest identity, and that hearing was set over multiple times as well. *Id*. Defendant's evidentiary identity hearing was finally held on April 12, 2022, and the court found she was in fact the person named in the indictment and she was ordered committed to this District.

*Washington*: Defendant finally made her initial appearance here in this Court on April 29, 2022. The detention hearing was originally set for May 4, 2022. As in Arizona, defendant repeatedly asked to continue that hearing. Defendant first asked the Court for a continuance to May 16, and then asked for a second continuance to May 24, 2022. Dkt. #s 118, 122, 124 and 126. Defendant filed a lengthy memorandum arguing for release, which attached 21 separate letters and certificates attesting to defendant's employment and family ties – all of which were in Mexico. Dkt. # 127. Pretrial Services in this District, after considering the facts, also recommended detention. After hearing from the parties, the Magistrate Judge entered a detention order. Dkt. # 130. This appeal followed.

### III.   DISCUSSION

An appeal of a magistrate judge's detention order is governed by 18 U.S.C. § 3145(b), which provides: "If a person is ordered detained by a magistrate judge, . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order . . ." This Court then reviews de novo the magistrate judge's detention

order. *See United States v. Koenig*, 912 F.2d 1990, 1192 (9th Cir. 1990). The Court need not give deference to the findings or the ultimate conclusion of the magistrate judge. *Id*.

More generally, the Bail Reform Act provides that a court should detain a defendant pending trial if "no condition or combination of conditions . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). The United States typically bears the burden of showing that a defendant poses a danger to the community by clear and convincing evidence, and it bears the burden of showing that a defendant poses a flight risk by a preponderance of the evidence. *United States v. Gebro*, 948 F.2d 1118, 1120 (9th Cir. 1991). Here, the government relied solely on the risk of flight analysis.

The Bail Reform Act identifies four factors that a court should consider in analyzing detention issues: "(1) The nature and circumstances of the offense charged, including whether the offense . . . involves a narcotic drug; (2) the weight of the evidence . . . ; (3) the history and characteristics of the person, including . . . family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, . . . ; and . . . (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . ." 18 U.S.C. § 3142(g). Of these factors, the weight of evidence is least important, and the statute neither requires nor permits pretrial determination of guilt. 18 U.S.C. § 3142(g).

Applying these factors, the Court finds that the Magistrate Judge properly ordered Defendant's continued detention and affirms that decision. Starting with Defendant's history and characteristics, she is a Mexican national with extensive and long-standing ties to that country. She has apparently resided and worked in Mexico her entire life, and has extensive

family ties to that country, including young children who reside there. Indeed, she was arrested on her warrant in this matter when she crossed the border from Mexico into the U.S. By comparison, she has very slight ties to the United States – primarily some distant relatives and friends in Arizona – and no ties whatsoever to this District. Defendant's nationality is not by itself grounds to detain her. However, her strong ties to that country, combined with her very weak ties to this country, is certainly relevant to the risk-of-flight analysis and counsels in favor of detention.

The nature of the offense also weighs in favor of detention. Defendant is alleged to have participated in a large multi-state and multi-national money laundering conspiracy. The conspiracy involved multiple participants traveling to multiple states over the course of the scheme. Defendant's involvement is alleged to have occurred over a number of years and included her personal travel to multiple jurisdictions. It is also alleged that she played a mid-level supervisory role in the scheme. Again, the sprawling geographic nature of the offense, and Defendant's own travel as part of the offense, is relevant to the risk of flight analysis.

Lastly, the strength of the evidence supports the Magistrate Judge's determination. As noted above, the strength of the evidence is the least important factor in the Court's analysis, and Defendant is of course presumed innocent. However, the strength of the government's case certainly bears on the risk of flight analysis. Here, the government alleges that the evidence against Defendant is quite strong, consisting of bank records showing Defendant's participation as both a funnel account holder and depositor, at least some of which are further supported by travel records and other business records. Multiple cooperating witnesses/defendants have also told agents that Defendant supervised their activities as part of the conspiracy. The very nature of the deposits – large cash deposits made by third parties in multiple states into defendant's own

ORDER - 6

bank account, and then later large cash deposits made by Defendant into third party accounts in multiple states – certainly give rise to an inference that the money movements were suspicious. This is not to suggest that the Court has prejudged the outcome of this case, and the government's allegations are just that – allegations. However, when considering the nature and circumstances of the offense combined with the weight of the evidence proffered by the government, the Court finds that this factor also supports detention.

## IV.   CONCLUSION

Based on the foregoing findings, the Court finds and rules that the Magistrate Judge correctly found that there was no condition or combination of conditions that could reasonably assure the appearance of Defendant. Accordingly, the Court hereby DENIES the Defendant's motion and affirms the detention order entered against her.

DATED this 12th day of July, 2022.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER - 7